```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
```

Timothy Gibson,                               CV-06-5740 (CPS)

                Petitioner,

                                    MEMORANDUM
    - against -                      OPINION AND
                                    ORDER

United States of America,

                Respondent.
```
-------------------------------------X
```

SIFTON, Senior Judge.

    Petitioner Thomas Gibson pled guilty on March 23, 2005 to one count of conspiring to distribute and possess with intent to distribute cocaine base and marijuana, in violation of 21 U.S.C. §§ 846. On July 6, 2005, petitioner was sentenced to time served of approximately 20 months. Now before this Court is petitioner's motion to withdraw his plea of guilty and vacate his conviction, pursuant to 28 U.S.C. § 2255. For the reasons stated below, this motion is denied.

                            **Background**

    The following facts are drawn from the parties' submissions in connection with this motion. Disputes are noted.

*Procedural History*

    Petitioner is a citizen of Guyana who emigrated to the

United States in 1993 and currently holds permanent resident alien status in the United States. In August 2003, petitioner was arrested on suspicion of involvement in a conspiracy to distribute and posses with intent to distribute cocaine base and marijuana. Petitioner was arraigned on August 13, 2003 and remanded to the Metropolitan Detention Center in Brooklyn ("MDC") pending trial. On March 23, 2005, petitioner pled guilty pursuant to a plea agreement with the government before Magistrate Judge Azrack. The plea was accepted by the undersigned on April 5, 2005. On July 6, 2005, petitioner was sentenced to time served with three years of supervised release. Petitioner is now facing deportation proceedings stemming from his conviction and has been advised that he will be deported if the criminal charge is not vacated.

*Factual Background*

Between August 13, 2003 and March 23, 2005, petitioner met with his court-appointed attorney Michael Hueston "many times – perhaps as many as twenty times." Gibson Initial Affidavit, ¶ 3. According to petitioner, during those meetings Hueston "never addressed the fact that accepting a plea agreement would subject [him] to automatic deportation." *Id.*[1]

---

[1] Elsewhere in his affidavit petitioner states that Hueston "advised me to plead guilty . . . [and] never explained to me that doing so would subject me to automatic deportation." Gibson Affidavit, ¶ 2.

According to petitioner, he met with Hueston on March 22, 2005, during which meeting "our discussions focused on whether or not to go to trial; we never focused our discussions on the risk of deportation." Gibson Reply Affidavit, ¶ 2b.  On March 23, Hueston and petitioner met again for five minutes before the plea hearing.  When petitioner realized that the plea agreement was different from that which he had seen the previous day he "asked Mr. Hueston if [he] could have more time to read and review it" but was told there was no time to do so. *Id*.[2]  Petitioner further states that during that meeting they "did not have time to address every provision in the agreement" and Hueston "did not draw my attention to the provision that said that one of the criminal penalties arising from accepting the plea was 'removal/ deportation' . . . . I do remember that Mr. Hueston said that the plea agreement was a great deal and that it would allow me to go back home to my family very soon." Gibson Initial Affidavit, ¶ 3.  According to petitioner, he signed the plea agreement on that day since he was anxious to get out of prison and return to his family and he was afraid he would lose "the deal"; he also relied on Hueston's "assurances that it would allow [him] to go home to

---

[2] Petitioner's initial affidavit did not mention the March 22 meeting or that the March 23 plea agreement was different from what he had previously seen.  His reply affidavit was submitted after reviewing Hueston's affidavit and states that he does "not disagree" with the fact that a meeting occurred on March 22. Gibson Reply Affidavit, ¶ 2b.  Petitioner does not contend that the plea agreement he ultimately signed contained a provision with respect to removal or deportation different from that which was in previous agreements.

[his] family."[3] Gibson Initial Affidavit, ¶ 3; Gibson Reply Affidavit, ¶ 2b.

In his own affidavit, Hueston disputes petitioner's statement of the facts. According to Hueston, "[a]s early as August 13, 2003, at Mr. Gibson's arraignment I informed him that he would be deported if he was either convicted or pled guilty to the charges in the indictment." Hueston Affidavit, ¶ 4. In addition, according to Hueston, petitioner was presented with written plea agreements on May 11, 2004 and July 23, 2004 (copies of which have been provided to the court), both of which include the same "removal/deportation" provision as is included in the agreement signed by petitioner.[4] Hueston Affidavit, ¶ 5. Hueston further states that he "discussed every provision in the plea agreements with Mr. Gibson, including the 'removal/ deportation' provisions" on various dates, including June 9, 2004, July 22, 2004, August 3, 2004 and August 12, 2004. Hueston Affidavit, ¶ 6. In reviewing the agreements with petitioner, Hueston "read the provisions to Mr. Gibson" and, in Hueston's "assessment of Mr. Gibson's demeanor and by [petitioner's] own

---

[3] Petitioner notes also that he was "unfamiliar with the kind of negotiations that occur in criminal proceedings because this was [his] first experience with the criminal justice system." Gibson Initial Affidavit, ¶ 3.

[4] That provision states that the "count carries the following criminal penalties . . . . Other criminal penalites: removal/deporation." Hueston Affidavit, Exhibit A; Petitioner's Motion, Exhibit C. The court has been provided with copies of the May 11 and July 23 plea agreements and a copy of the March 23 plea agreement.

statements . . . [determined that petitioner] fully understood that he would be subject to deportation if he pled guilty." *Id*. According to Hueston, Hueston "never informed [the petitioner] of anything to the contrary." *Id*. Moreover, according to Hueston, "on the few occasions that Mr. Gibson raised the issue of deportation during the course of [Hueston's] representation, [Hueston] reiterated that he would be deported if he pled guilty or was convicted after trial." Hueston Affidavit, ¶ 8.

Further, Hueston states that petitioner informed him and Investigator Gerard Gardner on March 18, 2005 that he wished to plead guilty. Hueston Affidavit, ¶ 9. Hueston then obtained a "final draft" of the plea agreement on March 21, 2005 and provided it to petitioner on March 22, 2005; while there were some modifications to the earlier agreements, the "removal/deportation" provision had not changed. *Id*. Hueston met with petitioner on March 22 to review the plea agreement, including the removal/deportation provision. At that meeting, petitioner "expressly stated . . . that he agreed with and understood all the plea agreement's provisions" and, according to Hueston's "assessment," petitioner "clearly understood the consequences of entering a plea of guilty, including being subject to deportation." Hueston Affidavit, ¶ 10.

At the plea hearing on March 23, 2005 before Magistrate Judge Azrack, the court stated that petitioner would "be subject

to deportation as a result of this conviction." Transcript of

Plea Proceeding at 10 (March 23, 2005).  When asked if he

understood that, petitioner responded "Yes, your Honor." *Id.*

According to petitioner, he was "very nervous" and "frightened

and intimidated . . . and feeling very overwhelmed" and only

responded "yes" "because I did not know what else to say at the

time.[5] I wanted to go home to my family as soon as possible."[6]

Gibson Initial Affidavit, ¶ 4.[7]  Magistrate Judge Azrack also

asked petitioner if he had read the plea agreement "carefully,"

whether he had spoken about it with Hueston, and whether he

understood what it contained.  Petitioner answered "yes" to each

of these questions. Transcript at 8.

Petitioner now states that if Hueston had advised him of the

deportation consequences of accepting the plea offer he "would

never have signed it" and would instead have "chosen to proceed

to trial." Gibson Initial Affidavit, ¶ 5.  Accordingly,

petitioner seeks to withdraw his plea of guilty and vacate the

---

[5] According to petitioner, he only has a "tenth [grade] education."
Gibson Initial Affidavit, ¶ 4.
    Hueston states that petitioner never informed him that he was
frightened, intimidated or overwhelmed or unable to understand the provisions
of the agreement because of a lack of education. Hueston Affidavit, ¶ 7.

[6] Petitioner has a fiancé and 5 children living in this country.
Petitioner's Brief, p.2.

[7] In petitioner's brief on this motion, his attorney states that
petitioner "believed that his attorney would have discussed the threat of
deportation if it was a real concern" and that, given the fact that Hueston
knew of petitioner's permanent resident alien status, the fact that he did not
draw petitioner's attention to the deportation provision "was interpreted by
Mr. Gibson to mean that it was of no concern."  Petitioner's Brief, p.4.
Those statements are not contained in petitioner's affidavit.

conviction on the grounds of ineffective assistance of counsel.

## Discussion

Petitioner alleges that Hueston provided ineffective assistance of counsel with respect to his plea and that his plea involuntary and unknowing. Under the test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on a claim of ineffective assistance counsel, petitioner must demonstrate both that his counsel's performance (1) "fell below an objective standard of reasonableness," *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985), and (2) "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also U.S. v. Couto,* 311 F.3d 179, 187 (2d. Cir. 2002) (discussing the *Strickland* standard in the context of guilty pleas).

According to petitioner, Hueston was under a professional obligation to inform him about the deportation consequences of pleading guilty and, in failing "to focus his attention" on that provision, his performance was objectively unreasonable. In support of this argument, petitioner notes that the ABA Standards for Criminal Justice, as well as other practice guides for criminal attorneys, state that defense counsel should strive to

provide information to non-citizen defendants about the deportation consequences of convictions arising from guilty pleas. *See* ABA Standards for Criminal Justice, 14-3.2 Comment, 75 (2d ed. 1982). However, the Second Circuit has already decided this issue, holding that "an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness." *Couto,* 311 F.3d at 187 (citing *U.S. v. Santelises*, 509 F.2d 703, 704 (2d Cir. 1975)).[8] Since that decision, courts in this circuit have uniformly held that the failure of an attorney to inform his or her client as to the deportation consequences of a guilty plea is not objectively unreasonable and does not constitute ineffective assistance of counsel. *See Cuero-Flores v. U.S.*, 2005 WL 525534, at *2 (E.D.N.Y. 2005) ("The Second Circuit has held that there is no ineffective assistance of counsel rendering a guilty plea unknowing and involuntary even where defense counsel has failed to advise a client of deportation consequences"); *Taylor v. U.S.*, 2004 WL 1857574, at *2 (S.D.N.Y. 2004); *Anderson v. U.S.*, 2005 WL 1711925, at *1 (D.Conn. 2005); *Taffe v. U.S.*, 2006 WL 3733301, at *1 (E.D.N.Y. 2006); *Pujols v. U.S.*, 2004 WL 1418024, at *3

---

[8] In *Couto,* the court ruled that an affirmative misrepresentation regarding deportation consequences is objectively unreasonable. 311 F.3d at 188.

(S.D.N.Y. 2004).[9] Accordingly, I conclude that even if counsel failed to inform the petitioner about the deportation consequences of his plea, that was not objectively unreasonable.

In any event, on the record before me and without need for a hearing, I find that petitioner was advised that he would be deported. Petitioner's affidavit puts forth a common and self-serving claim, that his attorney did not make him aware of the deportation consequences of his plea. This claim is contradicted by petitioner's own statements at the plea hearing in which he answered "yes" when the Magistrate Judge asked him if he had spoken about the agreements with Hueston and whether he understood that he could be deported as a result of pleading guilty.[10] "Where, as here, a habeas court is faced with

---

[9] Although not directly discussed by petitioner, I note that the court in *Couto*, in discussing a court's obligations during the plea hearing, expressed some doubt as to whether deportation is still to be considered "collateral," given that deportation for a non-citizen is now virtually automatic upon conviction and, accordingly, whether courts should now be obligated to inform the defendant of those consequences. *See Couto*, 311 F.3d at 189 (noting in dicta that the argument was "persausive" but not overruling precedent which holds that deportation is a collateral consequence only and therefore courts need not inform the defendant of that consequence). While some cases dealing with an attorney's obligation rely in part on the fact that deportation is only a collateral, rather than direct, consequence, district courts since the *Couto* decision have been unanimous in upholding the precedent that neither an attorney nor the court is required to inform a defendant of the deportation consequences of a guilty plea. *See Riviere v. U.S.*, 2005 WL 2614860, at *1 (N.D.N.Y. 2005) (regarding court's obligation); *Grullon v. U.S.*, 2004 WL 1900340, at *7 (S.D.N.Y. 2004) (with regards to an attorney's obligation, "deportation remains a collateral consequence of the guilty plea").

[10] Hueston's affidavit does not dispute petitioner's allegation that, during the meeting on March 23 before the plea hearing they did not have time to review the entire agreement again. However, by that point, petitioner had seen the removal/deportation provision several times and had been made aware of the deportation consequences of his plea, a fact noted by the court at the plea hearing and not disputed by petitioner.

self-serving allegations that are contradicted by a credible affirmation by a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings." *Castrillo v. Breslin*, 2005 WL 2792399, at *13-14 (S.D.N.Y. 2005) (citing cases); *see also Thai v. U.S.*, 2007 WL 13416, at *6 (E.D.N.Y. 2007) (finding no ineffective assistance of counsel where defendant presented only "his own self-serving testimony" to contradict an affidavit from his defense counsel which described an "entirely credible" version of events). Here, given the detailed statements under oath by petitioner's attorney and the absence of any evidence apart from petitioner's self-serving statements, I find petitioners statements incredible as a matter of law. *See Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) (habeas court has "responsibility to actually make a credibility finding in each case" though "in most circumstances a convicted felon's self-serving testimony is not likely to be credible"). Accordingly, even if Hueston was required to affirmatively inform petitioner of the deportation consequences of his plea, he did so and thus provided effective assistance.

---

It is noteworthy that the language of the deportation provision was the same in each of the agreements provided to the petitioner. The fact, if true, that the plea agreement signed on March 23 was different from that which was reviewed on March 22 is immaterial since petitioner has not alleged that the deportation language in the March 22 agreement was any different from that of the March 23 agreement.

## Conclusion

For the reasons stated herein, petitioner's motion is denied. The clerk is directed to transmit a copy of the within to all parties.

SO ORDERED.

Dated :   Brooklyn, New York
         January 25, 2007

                    By: /s/ Charles P. Sifton (electronically signed)
                                  United States District Judge